### 11049
### STATE v. HAWKINS
· (114 S. E., 538)

1. . CRIMINAL LAW—CIRCUIT COURTS HAVE NO POWER TO GRANT NEW TRIALS AFTER JURISDICTION DIVESTED BY APPEAL.—While Civ. Code 1912, § 3831, provides that all Circuit Courts shall have power to grant new trials in cases where there has been a trial by jury for reasons for which new trials have usually been granted in courts of law of the United States, such power is given to the circuit courts in 'those cases that are properly before them, and not in cases where the courts have been divested of jurisdiction by appeal to the Supreme Court, although the appeal has been disposed of and remittitur sent down.

2. CRIMINAL LAW—IN WHAT COURT MOTION FOR NEW TRIAL SHOULD BE MADE STATED; APPEAL MUST BE SUSPENDED BEFORE MAKING MOTION FOR NEW TRIAL.—A motion for new trial for after-discovered evidence, made in a case in which the circuit court has jurisdiction, should be before the circuit court or judge; if the case is pending in the Supreme Court, a motion should be made before that court to suspend the appeal in order that the motion for new trial may be made before the Circuit Court or Judge; if the appeal has been concluded and the remittitur has been sent down, a motion should be made in the Supreme Court, and not elsewhere, for defendant to be allowed to make the motion for new trial.

3. CRIMINAL LAW—MOTION FOR NEW TRIAL FOR AFTER-DISCOVERED EVIDENCE MUST BE MADE AT A TIME AFFORDING OPPORTUNITY FOR CONSIDERATION BEFORE ELECTROCUTION OF DEFENDANT.—If it is desired to make a motion for new trial for after-discovered evidence, in a case where a day has been assigned for the electrocution of defendant, the motion must be made at a time that will reasonably admit of the consideration of the motion before the day assigned for electrocution, or at such time before such day as shall be prescribed by a rule of the Supreme Court, but if his motion be made at a time that will not admit of such consideration, it will nevertheless be entertained if the defendant procures a temporary respite from the Governor.

4. CRIMINAL LAW—TRIAL COURT'S DISCRETION IN GRANTING NEW TRIAL FOR AFTER-DISCOVERED EVIDENCE WILL NOT BE DISTURBED, IN ABSENCE OF ABUSE OR ERROR OF LAW.—In consideration of a motion for new trial for after-discovered evidence, the circuit judge may exercise his discretion and such discretion will not be disturbed on appeal, unless the alleged after-discovered evidence is so lacking in merit that the granting of a new trial amounts to a clear abuse of discretion, or unless he has committed error of law.

5. CRIMINAL LAW—WHEN PRESUMPTION OF INFANT'S CAPACITY TO COMMIT CRIME ARISES STATED.—On trial of a criminal case, the presumption of incapacity to commit crime, arising from evidence that defendant has the mentality of one under 14 years of age, obtains only when it has been shown that the defendant has not lived 14 years.

Before MAUDLIN, J., Greenville. March, 1921. Appeal dismissed.

Cliff Hawkins was convicted of murder and sentenced to be electrocuted, and from an order granting a new trial for after-discovered evidence after affirmance of the sentence and remittitur, the State appeals. Appeal dismissed.

*Mr. David W. Smoak, Solicitor,* for the State, appellant, cites: *After discovered evidence cumulative and it was error to grant new ,trial:* 39 S. C., 414; 85 S. C., 229; 100 S. C., 32; 41 S. C., 522; 96 S. C., 382. *Right of Circuit Judge to hear motion:* 20 R. C. L., 303, Sec. 84; 104 U. S., 410; 117 U. S., 672; 2 Bay, 267; 87 S. C., 542.

*Messrs. Bonham & Price* and *Bowen & Bryson,* for respondent, cite: *Order of Circuit Judge will not be dis-turbed unless abuse of discretion is shown:* 49 S. C., 330; 85 S. C., 229; 89 S. C., 100; 106 S. C., 437. *Circuit Court alone has jurisdiction:* 1 Civ. Code 1912, Sec. 3831; 80 S. C., 267; 82 S. C., 126; 87 S. C., 942; 65 S. C., 418; 39 S. C., 427; 40 S. C., 297; 49 S. E., 164; 55 S. E., 868; 56 S. E., 593; 63 S. E., 147.

Nov. 3, 1922.

The opinion of the Court *en banc* was delivered by Circuit Judge FRANK B. GARY.

Cliff Hawkins killed Josie Craig on July 5, 1920, and William Morgan on July 9, 1920. He was tried upon an indictment charging murder of William Morgan, September 3, 1920, before Judge De Vore and a jury, in the Court of General Sessions for Greenville County, was found guilty, and, after a motion for a new trial was refused was sentenced to be electrocuted on October 1, 1920. He gave notice through his attorneys in due time of intention to appeal, but the appeal was not heard in the Supreme Court until the fall term, 1921, at which time the Supreme Court overruled all the appellant's exceptions, affirmed the judgment of the Circuit Court, and remanded the case for the purpose of assigning a new day for the execution of the sentence of the Court. 110 S. E., 250. The remittitur was filed January 26, 1921. The defendant was resentenced to be electrocuted April 7, 1922, the sentence being pronounced March 15, 1922, the defendant's attorneys being present and making no motion of any kind. On March

23, 1922, notice of a motion for a new trial upon after-discovered evidence, to be heard before Judge T. J. Mauldin at Chambers in Pickens, was served upon the solicitor. This motion was refused by Judge Mauldin upon the ground that he had no jurisdiction at Chambers to hear the motion; and the defendant immediately gave notice of intention to appeal to the Supreme Court from the order refusing the motion, Judge Mauldin granting an order staying sentence. The defendant abandoned this appeal at the May term of the Sessions Court; and Judge Mauldin, after due notice by attorneys, heard and granted a motion for a new trial upon after-discovered evidence, in an order dated May 15, 1922. The State now appeals from this order, and at the same time asks leave to review the case of *State v. Lee,* 80 S. C., 367, 61 S. E., 657, and the cases following it. This leave is granted.

We are therefore called upon, not only to review the order of Judge Mauldin granting a new trial to the defendant upon after-discovered evidence, but we are also called upon to announce what the law is and what the practice should be when it is desired by a party to move for a new trial upon after-discovered evidence after the case has been appealed to the Supreme Court, the appeal disposed of, and the remittitur sent down. There can be no question as to what the practice now is, when it is desired to make such a motion in a case that has not been appealed to the Supreme Court nor in a case that has been appealed and is still pending there. The announcement of the practice that we are called upon to make should be concise, unequivocal, and so plain that there may be no excuse for departure from it.

In making that announcement of what will hereafter be the practice, whether it involves the overruling of other cases or not, we should have a threefold purpose in view: First, to formulate a practice that is based upon sound judicial principles, and not one that is based upon an arbitrary

assumption of power; second, to formulate a policy that will preserve the liberties and rights of individual citizens; third, to formulate a policy that will protect the interests of the State—not such a policy as may be used by the designing to block the process of the Courts by an endless chain of motions and appeals.

With these cardinal ideas before us, we will first consider what should be considered the law upon the point suggested, and what should be announced as the practice that will hereafter be adhered to. We will then consider the merits of the appeal from the order named.

The first questions that naturally present themselves are: Does the case of *State v. Lee,* 80 S. C., 367, 61 S. E., 657, correctly announce the law concerning motions for new trials upon after-discovered evidence after an appeal to the Supreme Court and an affirmnce of the judgment and after the remittitur has been sent down? If it does not, what should be announced as the law and the proper practice?

It will be recalled that the Supreme Court, in the case of *State v. Turner,* 39 S. C., 414, 420; 17 S. E., 888, having before it *only the question of whether or not the Circuit Judge had jurisdiction* to entertain motion under circumstances such as those above described, announced that when the Supreme Court affirmed the judgment appealed from and sent down the remittitur, it parted with jurisdiction over the case, and that jurisdiction was restored to the Circuit Court for the purpose only of executing the judgment. Clearly this statement as to the relation of the Supreme Court to the judgment was *obiter dictum* whilst the statement of the relation of the Circuit Judge to the judgment was responsive to the question involved. But even then, after making this statement of the relation of the two Courts to the judgment, the Supreme Court proceeded, *in favorem vitæ,* to consider whether it would grant some relief to the defendant, and if the case had been one of merit it would have afforded that

relief, thus showing that it still had some control over, or connection with, the judgment.

In that case a motion was made before the Circuit Court for a new trial upon after-discovered evidence, after the remittitur had been sent down. The Circuit Judge refused to entertain the motion, holding that he was without jurisdiction. Thereupon an appeal from this order was taken to the Supreme Court and the holding of the Circuit Judge that he was without jurisdiction to entertain the motion was affirmed. The Supreme Court on account of the gravity of the matter and *in favorem vitæ* retained the last appeal, and gave to the defendant the privilege of appearing before the Supreme Court and asking to be allowed to make his motion for a new trial before the Circuit Court. The application was made to the Supreme Court, but was denied for lack of merit. It was here distinctly recognized that the Circuit Court did not have jurisdiction to entertain the motion without the permission and direction of the Supreme Court. But even in that case the Supreme Court was willing, if defendant's petition was meritorious, to afford him some opportunity to have his motion heard. ·

Succeeding cases recognize this view of the law, notably the case of *State v. Way,* 40 S. C., 294, 18 S. E., 676. In this case Chief Justice McIver interpreting the Turner Case and upholding it, said:

"When the original appeals were determined by this Court, and its judgment duly remitted to the Circuit Court, this Court thereby lost its jurisdiction, and the Circuit Court thereby regained its jurisdiction, only for the purpose of carrying out the mandates of the Supreme Court. But if the Circuit Court is then called upon to take any other action in the premises, and either refuses or undertakes to exercise such jurisdiction, its action is reviewable by appeal, and when such appeal is perfected, this Court again acquires jurisdiction of the matter appealed from, and hav-

ing thus regained jurisdiction may make such order, within its jurisdictional limits, as may be deemed proper."

In the light of the facts of this proceeding it will seem that the statement is tantamount to saying that after the Circuit Court was divested of jurisdiction of the case, except for the purpose of executing the judgment, the defendant by applying to the Circuit Court for a new trial, which Court was confessedly without jurisdiction to entertain the motion, and then by appealing from the order declining to entertain the motion, may reinvest the Supreme Court with full jurisdiction of the subject-matter, and the Supreme Court may then issue such orders as it deems proper to the Circuit Court. This proposition, it seems to us, does not correctly state why the Supreme Court was in a position to give some relief in a meritorious case, even though the Circuit Court was powerless at that time. It involves the inconsistency pointed out by Chancellor Gaillard in *Perkins v. Lang* (1 McCord Eq., 30, note), cited in *Ex parte* Knox, 17 S. C., 207, viz.:

"That after a case has been solemnly determined by this Court in the last resort, a single Judge on the Circuit might cause this decision to be again brought into question. This cannot be."

It would utterly destroy the symmetry of the law, tend to prolong litigation, and to produce endless confusion. It involves the further inconsistency that one Judge, who has by appeal (the voluntary act of the defendant), been divested of any jurisdiction of the case or any control over the final judgment therein, has still the right to bring that final judgment of another Court in review. It seems to us that it was this interpretation of the Turner Case, afterwards carried out, that caused the case to be subsequently overruled. It was not what was decided by the case upon the point involved, but it was the interpretation of it in *State v. Way,* and other cases that made it a stumbling block to the Courts in the execution of their processes. The Turner Case con-

tained sound principles, but when it was construed in such a way as to enable a convicted defendant, after his appeal to the Supreme Court, to still go before a Circuit Judge directly as a matter of right, and thus bring in review the judgment of the Supreme Court, this case and those following it were overruled. All the cases for some time after the Turner Case, even to *State v. Adams,* 73 S. C., 435, 53 S. E., 538, recognized that the Circuit Court was divested of its jurisdiction by appeal, and that it did not regain it when the remittitur was sent down.

And thus the law stood, and this was the reasoning by which it was justified until the case of *State v. Lee,* 80 S. C., 367, 61 S. E., 657, came before the Court *en banc.* In that case a motion was made in the Supreme Court to suspend an appeal from an order of Judge Gage at Chambers, refusing defendant's motion for a new trial on after-discovered evidence, for the purpose of allowing such a motion to be made in the Circuit Court. The Court held that it was without jurisdiction to entertain the motion, and it was therefore refused, adding:

"In reaching this conclusion the Court overrules the doctrine announced in the case of the *State v. Turner,* 30 S. C., 436, 17 S. E., 885, and the cases following the same, and is now of the opinion that the Circuit Court alone has jurisdiction to entertain such a motion. . . ."

Judges Watts and Ernest Gary dissented, except as to the holding that the Court was without jurisdiction to entertain the motion.

The order made in this case was very short and meager in its statements. It was a very equivocal announcement of the powers of the Circuit Court. The words of the order are:

"The Circuit Court alone has jurisdiction to entertain such a motion."

As to whether there should be any limitation as to time, or as to where or when, or under what circumstances

the motion might be entertained, the order is silent. Nevertheless, this case is interpreted by the profession as authority for the position that the Circuit Court is at all times—before the remittitur has been sent down and after it has been sent down—open for the consideration of motions for new trials upon after-discovered evidence, and that an appeal may be taken from the order made by the Circuit Judge upon such motion. Such interpretation was given that case in the cases of *State v. Rodman,* 87 S. C., 542, 70 S. E., 161, *Mills v. A. C. L. R. R. Co.,* 82 S. C., 126, 63 S. E., 308, *State v. Williams,* 108 S. C., 295, 93 S. E., 1006, and even others.

This interpretation of *State v. Lee* in these and cases following has led to a condition where convicted criminals may, by successive motions and appeals, block the process of the law indefinitely, and by their motions and appeals prevent their execution. Perhaps this tribunal was never called upon to meet a graver responsibility than that which now confronts it; nor was it ever more loudly called upon to use its judicial powers in a proper way to avert a deplorable condition, a condition that is not calculated to enhance respect for law and its enforcement, and which as a matter of fact would have a contrary effect. It was never intended by the framers and makers of our Constitution and laws that the condition referred to should exist, and there must be some legal way to avert it. We have the opportunity and it remains to be seen whether or not we have the disposition and ability to point out that way. Our conclusion is that the case of *State v. Lee,* as interpreted, makes at least an inaccurate and misleading statement of the law and the practice, and shoud be overruled.

Whilst it is true that Code, § 3831, does provide that all Circuit Courts of this State "shall have power to grant new trials in cases where there has been a trial by jury for reasons for which new trials have usually been granted in the Courts of law" of the United States,

manifestly this power is given to the Circuit Courts *in
those cases that are properly before them, and not in cases
where the Courts have been divested of their jurisdiction
by appeals to the Supreme Court.* In the light of the over-
whelming weight of authority, we must conclude then that
the Circuit Courts are without jurisdiction to entertain the
motion referred to under the circumstances named. But
what of the Supreme Court after the remittitur has been
sent down? The greater weight of authority is to the effect
that, when the Supreme Court sends down its remittitur,
the judgment is the judgment of the Supreme Court, to be
executed by the Circuit Court in obedience to the mandate
of the Supreme Court. It is elementary that Courts retain
at least a *quasi* control—a general supervisory control—
over its own judgments.

Speaking of the relation of Courts to final judgments
after remittitur has been sent down, as far back as 5 S. C.,
73, in the case of *Knox & Cill, v. R. R. Co.,* the Court
said:

"Whatever may be our views in regard to any control
which we may be authorized to exercise over the judg-
ments and decrees of the Court, or how far, *ex mero motu,*
we are at liberty to reconsider them, we will announce when
a proper case may so require."

Citing this language, Mr. Justice McGowan in *State v.
Turner* proceeds to say:

"It would seem, therefore, that in the opinion of eminent
Judges, there may exist some power in the Courts to con-
trol even after final judgment; but, as said by Judge Ker-
shaw in *Ex parte* Knox, 17 S. C., 214, '*While it is evident
that the power must rest somewhere,* it is evident that the
rule has not been established.' "

We may add that Judge Kershaw in that case proceeded
to establish the rule that the power rests with the appeal
Court. His judgment was affirmed, certainly in so far
as it referred to the judgments of the Appellate Court.

Having seen that the Circuit Court is without jurisdiction after an appeal has been taken in any way to control the final judgment in the case, that the power of control must rest somewhere, and that the power ought to rest with the Court whose judgment it is, we must conclude that the case of *State v. Lee,* 80 S. C., 367, 61 S. E., 657, and the cases following it do not correctly announce the law and the practice, and should be overruled.

It seems to us, further, that for the sake of certainty and for the information of the profession we should announce as the law and the practice that will be adhered to hereafter that, when it is desired to make a motion for a new trial upon after-discovered evidence in a case in which the Circuit Court has not been deprived of its jurisdiction by appeal or otherwise, the motion should be made before the Circuit Court or Judge; if the case is pending in the Supreme Court, a motion should be made before that Court to suspend the appeal, in order that the motion for a new trial may be made before the Cicruit Court or Judge; if the appeal has been concluded and the remittitur has been sent down, a motion should be made in the Supreme Court, and not elsewhere, for the defendant to be allowed to make the motion for a new trial. If the motion is shown to be meritorious, the Supreme Court will take proper steps to enable the defendant to make his motion for a new trial upon after-discovered evidence before the Circuit Court—the only Court that may hear such motions upon their merits.

If it is desired to make the motion above referred to, in a case where a day has been assigned for the electrocution of the defendant, the motion must be made at a time that will reasonably admit of the consideration of the motion before the day assigned for electrocution, or at such time before such day as shall be prescribed by a rule of the Supreme Court. But even if the motion in such a case should be made at such time as will not admit

of its consideration before the day fixed for the electrocution, the Court will nevertheless entertain it if the defendant shall, upon proper showing to the Governor, procure a temporary respite from the sentence, thereby giving the Court time in which to consider the preliminary motion, referred to. Should the Court refuse the preliminary motion the postponed execution may then be carried out without the necessity for a resentencing of the defendant by the Courts.

Unless it should be shown to the Supreme Court *prima facie* that the defendant is entitled to relief, that Court will take no steps in the matter. If *prima facie* it is shown to the Supreme Court that the defendant is entitled to relief, then the opportunity to get that relief should be and will be afforded him. Surely we may trust to the wisdom and good judgment of the Supreme Court, either to shut out motions that are lacking in merit or to permit those that have merit in them. If the motions have merit in them, the delay incident to hearing them should not defeat them. This it seems to us is a plain understandable plan that neither encourages nor permits trifling with the Court, and yet preserves the liberty of the citizens.

The motion for a new trial in this case was made before Judge Mauldin in pursuance of what was regarded as the proper practice in such a case ever since the case of *State v. Lee, supra,* was decided and followed in *State v. Rodman, supra, State v. Williams, supra,* and other cases. Whatever view we may now entertain of the correctness of those decisions we will not now, while announcing a different practice for the future, permit a defendant, who has apparently in good faith followed the recognized practice, to be thereby prejudiced. The gravity of the matter forbids it; fair dealing with the profession forbids it; and a tender regard for human life forbids it.

In making the order in question Judge Mauldin decided that it fulfilled all the requirements as to after-discovered evidence, and that in consequence of it the defendant should be given a new trial. We are asked to reverse this order. In the consideration of a motion of this kind the Circuit Judge is made the sole arbiter of those questions, and, however much the appellate Court might differ with him, it is powerless to control the exercise of his discretion, unless the alleged after-discovered evidence is so lacking in merit and falls so far short of the requirements as to such evidence that the Judge's granting a new trial upon it would amount to a clear abuse of his discretion, or unless he has committed error of law. *State v. Jones,* 49 S. C., 330; 26 S. E., 652; *State v. Anderson,* 85 S. C., 229, 67 S. E., 237, 137 Am. St. Rep., 887; *State v. Jones,* 89 S. C., 41, 71 S. E., 291, Ann. Cas., 1912D, 1298. We quote from *State v. Jones,* 89 S. C., 50, 71 S. E., 294, Ann. Cas., 1912D, 1298:

"This rule is too well settled to be disturbed at this late date, even if we felt inclined to do so, which we do not, that such motion, i. e., for new trial on after-discovered evidence, rests exclusively in the discretion of the Circuit Judge and no appeal lies from his decision except in the case stated below."

The Court then quotes from *State v. Workman,* 15 S. C., 547, as follows:

"This motion was addressed to the . . . Circuit Judge, and unless his discretion was abused, or some rule of law was violated, we have no authority to interfere."

Let us test the Circuit Judge's action by this unquestioned rule, and we will reach but one conclusion, to wit, that we should not reverse the order in question.

Without setting out here the alleged after-discovered evidence upon which Judge Mauldin based his order granting the defendant a new trial, it is sufficient to say that we do not consider it to be so manifestly lacking in the essen-

tials of such evidence that we would be warranted in characterizing the conduct of the Judge as clear abuse of his discretionary powers. Nor do we discover that after he entertained the motion he committed error of law that would warrant a reversal of his order.

At the trial of this case the defense of insanity was interposed, and some evidence to support the plea was offered.

We do not understand that after-discovered evidence, because it was along the same line as other evidence admitted at the trial, and would therefore be unavailing as after-discovered evidence. It might so strengthen evidence already offered as that the result would probably be different when it is offered. In such case it would be just as potent as after-discovered evidence, as if it was upon some defense not previously interposed. See *State v. Wiley,* 106 S. C., 437, 91 S. E., 382.

It is claimed that his Honor committed error of law when he invoked a presumption of incapacity to commit crime from the opinion of an expert that the defendant has the mentality of one under 14 years of age We do not think the Circuit Judge committed reversible error here. *We doubt that in the trial of a case such presumption arises only when it has been shown that the defendant has not lived 14 years.* In his order the Judge did refer to this presumption, but in applying the evidence before him he only treated it as evidence of an additional circumstance tending to show incapacity to commit crime. In this there was no error of law. We do not recall any other alleged error of law.

Having seen that we are not warranted in characterizing the conduct of the Judge as an abuse of his discretion, and having failed to find any reversible error of law that was committed by him, it must follow that the appeal herein, in so far as it questions the order herein, should be dismissed, and a new trial had in pursuance of Judge Mauldin's order. It is so adjudged.

Chief Justice EUGENE B. GARY, and Justices FRASER, COTHRAN, and MARION, and MEMMINGER, WILSON, DE VORE, SEASE, RICE, PEURIFOY, and TOWNSEND, Circuit Judges, concur.

Justice WATTS: I do not concur in the opinion of Circuit Judge Gary. I am of the opinion that some Court ought to have jurisdiction to entertain motions for new trials on the ground of after-discovered testimony.

I have changed my mind since I dissented along with Circuit Judge Ernest Gary in the case of *State v. Lee.* My change was brought about by the case of *State v. Williams,* 76 S. C., 135. I tried him on Circuit; he was convicted of murder. I overruled his motion for a new trial and sentenced him to death; he appealed, and the Supreme Court affirmed the judgment of the Circuit Court and remanded the case for the purpose of assigning a new day for the execution of the sentence. His attorneys discovered new evidence, and moved before the Circuit Court for a new trial,, which was granted by, I think, his Honor, Judge Prince, and Williams was either acquitted or case *"nol prossed."* · An innocent man would have suffered if some Court had not had the power to grant a new trial on after-discovered evidence.

My opinion is that, when the Supreme Court has jurisdiction of a case on a *prima facie* showing, it should have the power to suspend the appeal and send it to the Circuit Court for investigation, and with power to the Circuit Court to grant a new trial on after-discovered testimony.

After remittitur of the Supreme Court is sent down, that Court has no further jurisdiction. After that the Circuit Court should have jurisdiction to hear a motion for a new trial at any time, on the ground of after-discovered evidence, and grant a new trial in a proper case.

I think the order appealed from should be reversed as it was not after-discovered evidence, but merely cumulative evidence, and would not have changed the former verdict.

It is altogether different from the case of *State v. Casey,* 116 S. C., 280, 108 S. E., 112.

In my opinion the order appealed from should be reversed, and the case remanded for the purpose of assigning a new day to carry out the sentence heretofore imposed.